*In re* MARRIAGE OF JAMES HARTMAN, Petitioner-Appellee, and KATHERINE HARTMAN, Respondent-Appellant.

Third District   No. 3—93—0398

Opinion filed October 1, 1993.

Frank P. Andreano, of Joliet, for appellant.

Law Offices of Edward R. Jaquays, of Joliet (Edward R. Jaquays, of counsel), for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Katherine Hartman appeals from the award of custody of the parties' two-year-old daughter to her former husband, James Hartman. The trial court found that Katherine had made an unfounded allegation of child sexual abuse against James and relied on that as grounds for granting custody to James. Given the findings in this case, we affirm.

James and Katherine Hartman endured a short and stormy relationship. In the span of two months in 1990, Katherine discovered she

was pregnant, she and James were married and the couple separated. Following their separation, James refused to contribute to Katherine's support or pay for her medical treatment until the Illinois Department of Public Aid threatened suit against him. The baby, Lyndsey, was born in January 1991. James and Katherine resumed living together in March 1991, but the reconciliation was short-lived. The record contains references to a separation in July 1991, and to a final separation in July 1992. James filed his petition for dissolution of the marriage in December 1992. Both James and Katherine petitioned for custody of Lyndsey.

At trial, James offered evidence that Katherine had filed a complaint with the Department of Children and Family Services (DCFS) in which she alleged that she had seen James sleeping naked in the same bed with one of his daughters from his previous marriage. The alleged incident had taken place approximately two years before Katherine made the complaint, when the daughter in question was 12 years old. James then called his daughter to the witness stand and she unequivocally denied that such an event had ever taken place.

Katherine testified that James had been physically abusive toward her during the marriage. Further, she complained that James allowed Lyndsey to see him in the nude and to watch him while he urinated.

In announcing its determination of who would be awarded custody of Lyndsey, the trial court set out extensive findings of fact. It found that both parties had misused the Domestic Violence Act of 1986 (Ill. Rev. Stat. 1991, ch. 40, par. 2311–1 *et seq.*) and had raced to the courthouse to obtain *ex parte* orders of protection against each other. It discounted the testimony of the psychologists retained by the parties because neither psychologist conducted an independent investigation to determine whether he or she was being told the truth by Katherine and James; relying on the honesty of the parties diminished the doctors' ability to objectively view the case. The trial court further discounted the reputation evidence offered by the parties because it was based only on the absence of negative reputation and not the presence of positive reputation. It found that there are no community standards which prohibit nudity in the privacy of one's own home or urinating in front of a child. It did not detect even "the smell" of physical abuse of Lyndsey and found that both parties have equal good and bad qualities.

With regard to James, the court found that he had a good support system, although he was not Lyndsey's primary care giver and had never been. Except when he is around Katherine, James is even-tempered. The trial court explained that the testimony of James' daugh-

ters was more helpful than the testimony of his friends in this regard because the daughters would see what James is like behind closed doors, and, being teenagers, would be more likely to have disagreements with their parents. The court found that James is truthful, although he exaggerates or shades the truth to his benefit. He does not have an alcohol or drug abuse problem. James' indication that he would rather leave Lyndsey with a baby-sitter than with Katherine showed an inability to work with Katherine. He had previously agreed to allow Lyndsey to stay with Katherine and then argued that Katherine was not the preferred custodian. He is a responsible person with a stable job. James contributed to the marital discord by, at least, a lack of sensitivity and, at most, physical abuse.

With regard to Katherine, the trial court found that she should get credit for having carried the child and undergone a caesarean section surgery to give birth to the child. She also has a good support system. She has no current alcohol abuse problem. She suffers mood swings and overreacts to provocation. She attempted to hit James while he was holding Lyndsey. She lied about her actions at a party during which she and James had a physical confrontation that resulted in her receiving 10 stitches. The court determined that Katherine had deliberately lied regarding allegations of sexual abuse by James of his 12-year-old daughter based on the testimony of James' daughter, the length of time between the alleged incident and her complaint to DCFS and the fact that Katherine did not mention any suspicions of sexual abuse to the first psychologist to interview her.

The court then specifically set out its findings with regard to the factors listed in the statute covering awards of custody. With regard to the first factor, it goes without saying that the parents disagree about who should have custody. The court further found that the child is too young to express her wishes. The child interacts well with everyone involved and everyone loves her. Lyndsey has adjusted to living with her mother; her adjustment to school and the community means little given her age. Both Katherine and James are mentally and physically healthy. With regard to the threat of physical violence, the court found that both Katherine and James hit each other the entire time they were married, and although Katherine received more "souvenirs," she hit as much as she was hit. Last, the court found that neither party exhibited a willingness to encourage a relationship with the other party.

The court went on to consider several factors suggested by James' psychologist because the court found them helpful in its analy-

sis. These factors included honesty, reliability, insight into self, willingness to work with others and willingness to put the child before self. The trial court found that Katherine's deliberate lie with regard to the sexual abuse allegation was evidence that Katherine needed to win more than she wanted to do what was best for Lyndsey.

Based on all these factors and considerations, the trial court awarded custody to James. The court concluded that the deciding factor was the fact that Katherine had attempted to destroy the relationship between James and Lyndsey with her allegation of sexual abuse. The court opined, "J.D. Hartman did not win custody of his daughter, Katherine Hartman gave him custody of his daughter by making that allegation."

The sole issue on appeal is whether the trial court abused its discretion in awarding custody to James.

Section 602 of the Illinois Marriage and Dissolution of Marriage Act provides that custody shall be determined in accordance with the best interests of the child. (750 ILCS 5/602(a) (West 1992).) To aid the court in this assessment, the legislature has listed seven factors to be considered. (750 ILCS 5/602(a)(1) through (a)(7) (West 1992).) For our consideration, two of these factors are most important. One is "the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person." (750 ILCS 5/602(a)(6) (West 1992).) The second is "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." (750 ILCS 5/602(a)(7) (West 1992).) The trial court's determination of custody will not be disturbed absent a clear abuse of discretion. *In re Marriage of Wiley* (1990), 199 Ill. App. 3d 169, 556 N.E.2d 809.

Katherine argues that the trial court is punishing her after concluding that she lied with regard to the allegation of sexual abuse. She further argues that the trial court failed to consider adequately the threat of physical violence posed by James.

We find no such defects in the court's decision. To the contrary, we find that the court carefully and thoughtfully considered all the evidence presented to it. It articulated reasons for discounting that evidence which it discounted and gave each of the parties the benefit of the doubt with regard to past misbehavior. With regard to James' potential for violence, the court found that he was even-tempered except when he is with Katherine. In short, the trial court exercised its discretion with caution and common sense. We find no abuse in its conclusion.

Indeed, we find support for the proposition that unfounded allegations of sexual abuse made by one parent can be grounds for granting custody to the other parent. In *Mullins v. Mullins* (1986), 142 Ill. App. 3d 57, 490 N.E.2d 1375, the court concluded that the mother had engaged in a scheme to terminate the father's parental rights and destroy his relationship with the children by repeatedly complaining to DCFS that the children were being sexually abused. Based on this conclusion, the court upheld a transfer of custody to the father.

In light of the particular circumstances of this case, and considering all of the evidence, we cannot say that the trial court abused its discretion. The trial court is in a better position than we are to view the conduct of the witnesses and to determine their sincerity and credibility. While we hold that one false allegation does not constitute a "scheme," as in *Mullins v. Mullins*, such an allegation may be considered with other evidence in finding where the best interests of the child lie. We affirm the decision of the trial court in this case.

Accordingly, the judgment of the circuit court of Will County is affirmed and the mandate shall issue immediately.

Affirmed.

BARRY and LYTTON, JJ., concur.